UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
ANCILE INVESTMENT COMPANY LIMITED,              :
:
              Plaintiff,                            :
:   08 Civ. 9492 (PAC)
   -against-                                                      :
:   OPINION & ORDER
ARCHER DANIELS MIDLAND COMPANY,                 :
:
              Defendant.                           :
:
------------------------------------------------------------------------x

       HONORABLE PAUL A. CROTTY, United States District Judge:

       This dispute arises out of a series of commercial transactions involving Plaintiff Ancile Investment Co. Ltd. ("Ancile"), a Cayman Islands entity whose parent company is located in Switzerland; Defendant Archer Daniels Midland Co. ("ADM"), a multinational corporation headquartered in the United States; and a third party, Solo Vivo Industria e Comercio Fertilizantes Ltda. ("Solo Vivo"), a Brazilian company.  Ancile financed Solo Vivo's purchases of fertilizer materials from ADM.  Ancile claims that ADM (1) failed to return an overpayment Ancile made during one of the transactions; and (2) failed to provide Ancile with endorsed bills of lading for some of the fertilizer materials, thereby depriving Ancile of a security interest in the goods and opening the door for Solo Vivo to dispose of the goods without repaying Ancile for the loans.

       ADM moves to dismiss Ancile's Complaint on the grounds of forum non conveniens.  It argues that this matter should be adjudicated in Brazil.  Ancile opposes the motion to dismiss and cross-moves for summary judgment on five of its eight claims.  ADM opposes the cross-motion for summary judgment, asks the Court to strike the Declaration of Fabio Ulhoa Coelho ("Coelho

1

Declaration") submitted by Ancile in support of its cross-motion, and requests a continuance pursuant to Federal Rule of Civil Procedure 56(f) to allow it to conduct the discovery it needs to further oppose summary judgment.

For the reasons that follow, ADM's motion to dismiss for forum non conveniens is DENIED. Ancile's motion for summary judgment is DENIED without prejudice to its renewal following the close of discovery. ADM's motion to strike the Coelho Declaration is DENIED. Lastly, because the Court denies Ancile's motion for summary judgment, ADM's request for a Rule 56(f) continuance is unnecessary and is also DENIED.

## BACKGROUND

**I.      Facts**[1]

In July 2007, Ancile entered into a Credit Facility Agreement with Solo Vivo. (Compl. ¶ 7.) Under the terms of the Credit Facility Agreement, Ancile agreed to make short-term loans to Solo Vivo to finance Solo Vivo's importation of raw materials to manufacture fertilizer. (Id. ¶¶ 8-9.) Solo Vivo agreed to provide Ancile with security interests in the fertilizer materials pending repayment of the short-term loans. (Id. ¶ 11.)

Ancile claims that the basic operation of the Credit Facility Agreement was informed by its "prior course of dealing" with Solo Vivo and ADM. (See id. ¶¶ 14-28.) In June 2007, Solo Vivo contracted with ADM to purchase monoammonium phosphate carried on the ship *African Falcon* under Bill of Lading No. 4. (Id. ¶ 14.) Ancile agreed to finance Solo Vivo's purchase by

---

[1] When considering a motion to dismiss, "the court is to accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). The facts in this section are therefore drawn from Ancile's Complaint, and the Court accepts them as true for the purposes of evaluating ADM's motion to dismiss for forum non conveniens. In addition, however, the parties have submitted statements of fact pursuant to Local Rule 56.1 in connection with Ancile's cross-motion for summary judgment. The factual allegations contained in these statements are discussed in Part IV, infra, and inform the Court's consideration of Ancile's cross-motion.

2

advancing 83.33% of the total invoice amount to ADM in exchange for a security interest in the phosphate.  (Id. ¶ 15.)  Solo Vivo instructed ADM to deliver Bill of Lading No. 4, duly endorsed, to Ancile as security for the loan.  (Id. ¶¶ 16-17.)  Ancile claims that once it paid its portion of the invoice amount to ADM, ADM endorsed Bill of Lading No. 4 to Ancile and delivered it to Ancile's representative in Brazil, per Solo Vivo's instructions.  (Id. ¶¶ 19-21.)

Also in June 2007, Solo Vivo contracted with ADM to purchase potassium chloride carried on the ship *Jullieta* under Bill of Lading No. 1.  (Id. ¶ 22.)  Ancile advanced 83.33% of the total invoice amount to ADM and Solo Vivo instructed ADM to deliver Bill of Lading No. 1 to Ancile.  (Id. ¶¶ 22-25.)  According to Ancile, ADM then endorsed Bill of Lading No. 1 and delivered it to Ancile's representative in Brazil as security for the loan.  (Id. ¶ 26.)

In August 2007, following the signing of the Credit Facility Agreement, Solo Vivo contracted with ADM for two further shipments of fertilizer materials.  The first was a shipment of muriate of potash, carried from Russia aboard the *Calypso* under Bill of Lading No. 10.  (Id. ¶ 30.)  In October 2007, pursuant to the Credit Facility Agreement, Solo Vivo instructed ADM to deliver Bill of Lading No. 10, duly endorsed, to Ancile's representative in Brazil.  (Id. ¶ 35.)  Ancile subsequently made a payment, via wire transfer, of $1,606,545.11 to an ADM account at Citibank in New York.  (Id. ¶ 37.)  This payment was $650,683.35 more than the 83.33% of the invoice amount Ancile was required to pay under the Credit Facility Agreement, and was, in fact, more than the total invoice amount for the shipment.  (Id. ¶¶ 38-40.)  Ancile requested that ADM return the excess amount, but ADM never repaid the funds.  (Id. ¶¶ 43-44.)  Moreover, after receiving Ancile's payment, ADM never endorsed Bill of Lading No. 10 over to Ancile as it had done in the past.  (Id. ¶ 41.)  By failing to do so, it denied Ancile a security interest in the muriate

of potash, which allowed Solo Vivo to dispose of the goods without repaying Ancile for the short-term loan.  (Id. ¶ 42.)

A similar situation developed with respect to the second August 2007 shipment, which consisted of monoammonium phosphate from China shipped on the *Abkhazia* under Bill of Lading No. PGU-04.  (Id. ¶ 31.)  In October 2007, Solo Vivo instructed ADM to deliver Bill of Lading No. PGU-04 to Ancile.  (Id. ¶ 36.)  Ancile then paid 83.33% of the invoice amount into an ADM account at Citibank in New York.  (Id. ¶ 45.)  ADM, however, never endorsed Bill of Lading No. PGU-04 to Ancile, thereby depriving Ancile of its security interest in the phosphate.  (Id. ¶¶ 46, 50.)  According to Ancile, Solo Vivo sold a portion of the phosphate and placed the remainder in a Brazilian warehouse owned by ADM.  (Id. ¶¶ 47-49.)

## II.     Ancile's Complaint

Ancile's Complaint advances eight claims.  The first two claims arise under Brazilian law.  "Count I" alleges violations of Articles 876 and 884 of the Brazilian Civil Code.  Ancile claims that ADM was unjustly enriched by Ancile's overpayment for the muriate of potash and that Ancile is entitled to reimbursement of the excess funds.  (Id. ¶¶ 51-54.)  "Count II" alleges violations of Articles 186, 187, and 927 of the Brazilian Civil Code.  Ancile claims that ADM's failure to endorse certain bills of lading to Ancile, and its release of goods directly to Solo Vivo, subject ADM to extra-contractual liability under Brazilian law for failing "to act in strict good faith and probity in its commercial dealings."  (Id. ¶¶ 55-62.)

The remaining six claims arise under New York law.  "Count III" alleges unjust enrichment with respect to the overpaid funds.  (Id. ¶¶ 63-67.)  "Count IV" alleges conversion with respect to the overpaid funds.  (Id. ¶¶ 68-71.)  "Count V" is a claim for bailment.  (Id. ¶¶ 72-76.)  "Count VI" alleges breach of contract.  (Id. ¶¶ 77-80.)  "Count VII" alleges conversion

of the goods shipped under Bills of Lading No. 10 and No. PGU-04.  (Id. ¶¶ 81-84.)  Finally, "Count VIII" alleges that ADM and Solo Vivo engaged in a conspiracy to defraud Ancile.  (Id. ¶¶ 85-95.)

## DISCUSSION

### III.     Motion to Dismiss for Forum Non Conveniens

ADM moves to dismiss the Complaint on the grounds of forum non conveniens.  It contends that the dispute should be adjudicated in Brazil because, among other reasons, all of the events underlying Ancile's claims occurred there and most of the key witnesses and documents are located there.  (See Def. Mem. in Support of Motion to Dismiss ("Def. Mem. MTD") at 1.)  By contrast, "[t]he only connection to [the Southern District of New York] is that the ADM invoices for the Solo Vivo shipments at issue were paid by wire transfer to ADM's Citibank account in New York."  (Id.)

Ancile opposes the motion to dismiss.  It argues that ADM mischaracterizes the dispute by focusing on the events that occurred in Brazil, and claims that New York is an appropriate forum because the decisions that led to Ancile's injuries—i.e. the decision to keep the overpaid funds and the decisions not to endorse the bills of lading—were made by ADM employees in the United States.  (See Pl. Mem. in Opp. to Motion to Dismiss ("Pl. Opp. MTD") at 7-12.)

When deciding a motion to dismiss for forum non conveniens, the court should consider: (1) the degree of deference to be afforded to the plaintiff's choice of forum; (2) whether there is an adequate alternative forum for adjudicating the dispute; and (3) whether the balance of private and public interests tips in favor of adjudication in one forum or the other.  Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citing Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001)).  "[U]nless the balance is strongly in favor of the defendant,

the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947); see also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000) (holding that forum non conveniens is a proper ground for dismissal only in "rare instances"). "The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." Iragorri, 274 F.3d at 74-75.

In the present matter, the factors the Court should consider do not strongly favor dismissal for forum non conveniens. First, Ancile's choice of the Southern District of New York as the forum in which to bring its claims is entitled to a considerable degree of deference. Second, although the parties agree that Brazil is an adequate alternative forum, this factor alone is not enough to warrant dismissal. Third, the balance of private and public interests do not tip in favor of adjudication in Brazil so strongly that dismissal is required.

### A.     Deference to Plaintiff's Choice of Forum

The degree of deference the court should show to the plaintiff's choice of forum "moves on a sliding scale depending on several relevant considerations." Iragorri, 274 F.3d at 71. In determining the appropriate amount of deference to be shown, the court should consider: (1) whether the plaintiff is a U.S. citizen; (2) the chosen forum's convenience for the plaintiff; (3) the availability of witnesses in the chosen forum; (4) the defendant's amenability to suit in the plaintiff's chosen forum; (5) the availability of appropriate legal assistance in the chosen forum; and (6) evidence of forum shopping on the part of the plaintiff. BFI Group Divino Corp. v. JSC Russian Aluminum, 298 Fed. Appx. 87, 90 (2d Cir. 2008) (citing Iragorri, 274 F.3d at 72.)

In the present matter, these factors tip in favor of showing considerable deference to Ancile's choice of the Southern District of New York.

### 1. Whether the plaintiff is a U.S. citizen

When a foreign plaintiff chooses a U.S. forum, it "is much less reasonable" to presume that the choice was made for convenience. Iragorri, 274 F.3d at 71 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)). Nevertheless, "[i]t is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district." Iragorri, 274 F.3d at 73; see also Murray v. British Broad. Corp., 81 F.3d 287, 290 (2d Cir. 1996) (holding that the reduced deference shown to a foreign plaintiff's choice of a U.S. forum "is not an invitation to accord [the choice] no deference since dismissal for forum non conveniens is the exception rather than the rule") (citation and internal quotation marks omitted; emphasis in original).

Ancile is a Cayman Islands entity, and its parent company is located in Switzerland. (Compl. ¶ 2; Pl. Opp. MTD at 7.) This factor might therefore tip slightly in favor of showing less deference to Ancile's choice of forum. In light of the other factors, however, it is hardly dispositive of the issue.

### 2. Chosen forum's convenience for the plaintiff

ADM contends that the Southern District of New York is "distinctly inconvenient for both" parties. (Def. Mem. MTD at 7.) Yet ADM is a large, U.S.-based multinational corporation that is fully capable of litigating disputes both here and in many other jurisdictions. In any event, this factor is not meant to judge the chosen forum's convenience for the defendant—its focus is on the plaintiff's convenience. See Iragorri, 274 F.3d at 72. In that respect, "Brazil would be no more convenient to Ancile than New York." (Pl. Opp. MTD at 7.) For the purposes of this motion, the Court assumes that Ancile considered the convenience of the

Southern District of New York before bringing suit here and determined that it was convenient. This factor tips in favor of deference to Ancile's choice.

### 3. Availability of witnesses in the chosen forum

According to ADM, "[v]irtually all of the acts and events embraced by [the dispute] took place in Brazil and involved or were carried out by people who lived and worked in Brazil for Brazilian companies." (Def. Mem. MTD at 8.) Specifically, ADM claims that its Brazilian subsidiary, ADM do Brasil, received Solo Vivo's orders for the fertilizer materials shipped on the *Calypso* and *Abkhazia*, and handled the bills of lading for those goods. (Id.) Moreover, it contends that for the *African Falcon* and *Julietta* shipments, the bills of lading were endorsed to Ancile not by ADM employees, but instead by Ancile's own Brazilian lawyer. (Id. at 10.) Thus, "almost all of the ADM, Solo Vivo and Ancile personnel and agents with relevant knowledge of the handling and endorsement of the bills of lading and the underlying transaction [sic] are located in Brazil," whereas none "of the potential witnesses to the issues at bar are located in this district." (Id. at 11.)

Ancile, by contrast, argues that "[t]his case is not about the ministerial actions of the agents of [ADM] in Brazil in endorsing and delivering [bills of lading]. It is about the decision made and approved by ADM management in the United States (1) regarding if, how, when, and to whom ADM's agents in Brazil would handle, endorse, deliver and release the relevant [bills of lading], and (2) regarding the decision to keep what ADM has admitted was an accidental overpayment by Ancile." (Pl. Opp. MTD at 8.) In other words, whatever happened in Brazil was merely the low-level implementation of decisions made in the U.S. (See id. at 8-12.)

On the record before it, the Court can only conclude that both parties' arguments on this factor have merit. Undoubtedly, given the nature of the disputed transactions, a significant

8

number of potential witnesses will be located in Brazil. At the same time, however, Ancile has set forth credible evidence—especially with respect to the overpayment issue—that other important witnesses will be located in the Southern District of New York or, at minimum, in the United States. In any event, regardless of where this matter is adjudicated, it is clear that both parties will be required to call witnesses from a variety of jurisdictions—at minimum, from Brazil, the U.S., and Switzerland. To the extent these witnesses are employees of either ADM or Ancile, it should not be difficult for the parties to make them available for trial. While it may be more convenient for ADM's theory of the case to have the matter adjudicated in Brazil, this does not make the Southern District of New York so inconvenient that adjudication here would be inappropriate. This factor tips only slightly, if at all, away from giving deference to Ancile's choice of forum.

### 4. Defendant's amenability to suit

This factor weighs "the defendant's amenability to suit in the forum district," i.e. in the forum the plaintiff has chosen. Norex, 416 F.3d at 155 (emphasis added). In its papers, however, ADM muddies the waters by addressing its own amenability to suit in Brazil, and also by arguing that Brazil is a better forum because Solo Vivo—which ADM suggests it might seek to implead as a third-party defendant—is amenable to suit in Brazil but not in New York. (Def. Mem. MTD at 12.) The relevant facts for evaluating this factor are that ADM is a multinational corporation which is headquartered in the U.S. and does business in the Southern District of New York. It cannot plausibly argue that it is not amenable to suit here. This factor tips in favor of deference to Ancile's choice of forum.

### 5. Availability of appropriate legal assistance

This factor seeks to determine whether appropriate legal assistance is available to the parties in the plaintiff's chosen forum. See Norex, 416 F.3d at 155. As with the "amenability to suit" factor, ADM confuses the issue by arguing that any legal assistance available to the parties here would also be available in Brazil. (Def. Mem. MTD at 12.) Unfortunately for ADM, that is not the point. Both parties have retained highly competent New York counsel who are fully capable of litigating this dispute in this forum. This factor supports Ancile's choice of forum.

### 6. Evidence of forum shopping

The court may determine that a plaintiff's choice of forum was motivated by inappropriate forum shopping considerations where it concludes that the plaintiff is trying to take advantage of (1) U.S. laws favorable to the plaintiff's case; (2) the "habitual generosity" of U.S. juries; (3) the plaintiff's popularity or the defendant's unpopularity in the region; or (4) the inconvenience or expense to the defendant of litigating in the U.S. Iragorri, 274 F.3d at 72.

ADM does not address these factors. Instead, it points to Ancile's participation in three related proceedings in Brazil—Solo Vivo's ongoing bankruptcy proceeding and two civil actions brought by Ancile that appear tangentially related to the present dispute—as evidence that Ancile finds Brazil to be a convenient forum. From this, ADM asks the Court to conclude that Ancile must be engaging in forum shopping by suddenly choosing to sue ADM in New York. (See Def. Mem. MTD at 13-15.) ADM also contends that by suing in New York, Ancile may be looking for a "windfall" or "double recovery" by prevailing on similar claims both here and in Brazil. (See id.)

In evaluating this factor, the Court will set aside ADM's arguments and instead address the four factors explained in Iragorri. The second factor does not appear to help ADM because

the value of ADM's overpayment for the fertilizer materials is undisputed, thereby limiting a jury's leeway in awarding damages.  The third and fourth factors likewise do not suggest evidence of forum shopping because ADM, not Ancile, would be the "home team" in the U.S. forum and because, as discussed earlier, it would be neither inconvenient nor particularly expensive for ADM to litigate in the Southern District of New York.  Simply put, the Court finds no evidence that Ancile's choice of this District was the result of improper forum shopping.

### B. Existence of an Adequate Alternative Forum

The party moving to dismiss for forum non conveniens bears the burden of demonstrating the existence of an adequate alternative forum.  Usha (India), Ltd. v. Honeywell Int'l, Inc., 421 F.3d 129, 135 (2d Cir. 2005).  An alternative forum is adequate if: (1) the defendants are subject to service of process there; (2) it permits litigation of the subject matter of the dispute; and (3) it is not otherwise unsatisfactory.  BFI Group, 298 Fed. Appx. at 91.  Only on rare occasions will the "alternative forum…be so unsatisfactory that the forum is inadequate."  Di Rienzo v. Philip Servs. Corp., 232 F.3d 49, 57 (2d Cir. 2000).

Ancile does not dispute that Brazil is an adequate alternative forum.  (Pl. Opp. MTD at 13-14; OA TR.)  ADM is subject to service of process there and Brazil permits litigation of the subject matter of the suit.  (Def. Mem. MTD at 16-17.)  This Court will not dismiss for forum non conveniens, however, merely because an adequate alternative forum exists.

### C. Balance of Private and Public Interests

Finally, the Court must balance the private and public interest factors implicated by the plaintiff's choice of forum.  "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring

suit in another country." Iragorri, 274 F.3d at 74. "[T]he plaintiff's choice of forum is to be respected unless the balance of both public and private interests strongly justifies a transfer." Manu Int'l, S.A. v. Avon Prods., Inc., 641 F.2d 62, 65 (2d Cir. 1981) (citation and internal quotation marks omitted; emphasis added). Here, the balance of hardships is inconclusive. Both parties prefer a certain jurisdiction but both parties appear fully capable of litigating this matter fairly in both New York and Brazil. This prong therefore does not support dismissal.

### 1. Private interests

Private interest factors the Court should take into consideration are: (1) the relative ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) "all other practical problems that make trial of a case easy, expeditious, and inexpensive." Scottish Air Int'l v. British Caledonian Group, PLC, 81 F.3d 1224, 1232 (2d Cir. 1996).

ADM's arguments on this factor are essentially the same as its arguments on the availability of witnesses, discussed in detail above. ADM claims that key Brazilian witnesses cannot be compelled to testify in New York; relevant evidence, including documents in Portuguese, is mainly located in Brazil; and the cost of travel and accommodation for the Brazilian witnesses who will testify is extremely high. (Def. Mem. MTD at 18-20.) In response, Ancile argues that the testimony of Brazilian witnesses (who are not as vital to the case as ADM claims) can always be obtained by other means, e.g. by letters rogatory; other evidentiary materials may easily be transported to New York, and many of the key documents are in English rather than Portuguese; and accommodation and travel costs for witnesses will be high regardless of where the dispute is adjudicated because witnesses will be required to travel from a number of jurisdictions. (Pl. Opp. MTD at 14-18.)

While ADM urges that New York is a less convenient forum for its purposes, it does not establish that the balance of private interests tips significantly in favor of dismissal. For example, the Second Circuit has held that "[t]o the extent documents exist [in a foreign jurisdiction], advances in transportation and communication afford this issue less weight." DiRienzo, 232 F.3d at 66. Similarly, where potential witnesses reside in both potential forums as well as in other locations, the hardship of procuring witnesses generally does not favor dismissal. See Byrne v. British Broad. Corp., 132 F. Supp. 2d 229, 238 (S.D.N.Y. 2001). The Southern District of New York may have its disadvantages, but ADM has not demonstrated that it is so inconvenient that adjudication of the dispute here is entirely inappropriate. It is "easier to transfer a witness or a document than to transfer a lawsuit." Manu Int'l, 641 F.2d at 65.

### 2. Public interests

Public interest factors the Court should consider include the "administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law." Aguinda v. Texaco, Inc., 303 F.3d 470, 480 (2d Cir. 2002) (citing Gilbert, 330 U.S. at 508-09).

ADM argues first that, under New York's choice-of-law rules, Brazilian law will govern this action even if the Court were to retain jurisdiction. (Def. Mem. MTD at 21-22.) Further, it restates its argument that a judgment here might be inconsistent with judgments in related Brazilian matters, and also contends that given the locus of operative facts, Brazil's interest in regulating the importation of goods into the country, and its interest in the outcome of the Solo Vivo bankruptcy proceedings, Brazil has the stronger interest in adjudicating this dispute. (Id. at 22-23.)

13

Ancile counters by arguing that New York has an interest in the controversy because ADM does business here and is listed on the New York Stock Exchange. (Pl. Opp. MTD at 20.) Moreover, "[t]he decisions and authorizations that harmed Ancile were made by [ADM] in the United States. The overpaid funds at issue were never in Brazil. They came from Ancile's bank account in Switzerland, and went into [ADM's] bank account in New York." (Pl. Opp. MTD at 20-21.) Lastly, Ancile argues that it will not be unusually difficult or burdensome for this Court to apply Brazilian law as necessary. (Id. at 21-22.)

Brazil would have a strong interest in the outcome of this dispute, and Brazilian law applies to some of Ancile's claims. Nevertheless, the balance of public interests does not tip decisively in favor of dismissal. New York has a cognizable interest in this matter because ADM is a U.S.-based multinational corporation that conducts significant operations here. See Metito (Overseas) Ltd. v. General Elec. Co., No. 05-cv-9478 (GEL), 2006 WL 3230301, at *6 (S.D.N.Y. Nov. 7, 2006) (holding that U.S. courts have an interest in the conduct of U.S. multinational corporations whose activities have an impact in countries around the world). Moreover, it would not be "unusually difficult or burdensome" for the Court to apply Brazilian law. United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 209 (S.D.N.Y. 2002); see also Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 492 (2d Cir. 1998) (holding that the need to apply foreign law is a public interest factor favoring dismissal but is not dispositive).

Because public interest factors must be balanced along with private interest factors, and because these factors are only dispositive if they "strongly" favor transfer, Manu Int'l, 641 F.2d at 65, this factor does not favor dismissal for forum non conveniens.

14

In sum, after reviewing all of the factors the Court must consider in evaluating ADM's forum non conveniens motion, there is no sufficient reason to reject Ancile's choice of forum. Consequently, ADM's motion to dismiss is denied.

## IV.   Cross-Motion for Summary Judgment on Liability

Ancile cross-moves for summary judgment on the issue of ADM's liability under Counts I and III (alleging unjust enrichment under Brazilian and New York law) and Counts II, IV, and VII (alleging conversion under Brazilian and New York law) of the Complaint.  Ancile claims that the undisputed facts in the record demonstrate that ADM is liable under both Brazilian and New York law, as well as under Illinois law for the purposes of its conversion claims, for the injuries Ancile suffered.  (Pl. Mem. in Support of Summ. Judg. ("Pl. Mem. SJ") at 13-23.)

ADM opposes the cross-motion.  It argues that disputes over material facts preclude summary judgment and Ancile is not entitled to judgment as a matter of law on any of its claims under any applicable law.  (See Def. Opp. to Summ. Judg. ("Def. Opp. SJ") at 11-24.)  Further, ADM asks the Court to strike the Coelho Declaration on which Ancile relies for its argument that Ancile is entitled to judgment in its favor under Brazilian law.  (Id. at 14-16.)  Lastly, ADM argues that, if the Court is inclined to further consider Ancile's cross-motion for summary judgment, it should nonetheless grant ADM a continuance pursuant to Federal Rule of Civil Procedure Rule 56(f) in order to allow it to obtain the discovery it needs to further oppose summary judgment.  (Id. at 24-25.)

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under governing law...."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving

party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has made an initial showing that no genuine issue of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," but must instead present specific evidence in support of its contention that there is a genuine dispute as to material facts.  Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotations omitted); see also Fed. R. Civ. P. 56(e)(2).  The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed.R.Civ.P. 56(c)).

      Pursuant to Local Rule 56.1, Ancile presents supplemental facts that it claims support its cross-motion for summary judgment on a wide range of topics including, for example: shipments on particular vessels, endorsements of bills of lading as well as Solo Vivo's financial condition and its bankruptcy.  ADM opposes Ancile's supplemental facts, and rebuts each with its own factual assertions.  There is no need to recite all the factual contentions, or line up the alleged facts under the claims for unjust enrichment and conversion.  The court notes that there are questions of choice of law, and where Brazilian law applies, sharp dispute as to what the law is.  Suffice it to say that based on even the most cursory examination of the present highly incomplete record there is no basis to grant Ancile's cross-motion for summary judgment.  The parties have yet to engage in any discovery and most of the "facts" they present are drawn from declarations instead of deposition transcripts or relevant documents.  Summary judgment is therefore denied with leave to renew following the close of discovery.

The Court need not rely upon the Coelho Declaration's analysis of Brazilian law in order to determine that summary judgment is inappropriate at the present stage in the proceedings; and accordingly there is no need to strike the document from the record. The Coelho Declaration may well be useful at some time, but that time is not now. Finally, in light of the disposition of the summary judgment motion, there is no need to grant a Rule 56(f) continuance to allow for limited discovery to allow ADM to respond to Ancile's motion. The parties should engage in discovery, as contemplated by the Federal Rules of Civil Procedure.

For the foregoing reasons, ADM's motion to dismiss for forum non conveniens is DENIED; Ancile's cross-motion for summary judgment is DENIED with leave to renew following the close of discovery; ADM's motion to strike the Coelho Declaration is DENIED; and ADM's motion for a Rule 56(f) continuance is DENIED. The parties should submit a civil case management plan for Court approval by October 5, 2009.

Dated: New York, New York
       September 23, 2009

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge