UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ANCILE INVESTMENT COMPANY LIMITED,   :

                  Plaintiff,   :

              v.   :   Civil Action No. 08 CV 9492
                            (KMW) (FM)

ARCHER DANIELS MIDLAND COMPANY,   :

                  Defendant.   :

------------------------------------------------------------x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF ARCHER DANIELS MIDLAND COMPANY'S MOTION FOR DETERMINATION OF CHOICE OF LAW, AND TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE**

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York  10018
(212) 218-5500
Attorneys for Defendant Archer Daniels Midland Company

## **TABLE OF CONTENTS**

                                                                                                                                   **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

    POINT I.    ANCILE FAILS TO ESTABLISH THAT NEW YORK CHOICE OF LAW ANALYSIS REQUIRES THE SELECTION OF BRAZILIAN LAW .................................................................................. 2

        A.    The Parties' Domiciles Are Not Related To Brazil ..................................... 2

        B.    The Locus Of The Conduct At Issue In Count I Was Illinois, Not Brazil .............................................................................................................. 3

    POINT II.    THERE HAS BEEN NO RULING ON THE ISSUE OF CHOICE OF LAW ............................................................................................ 6

    POINT III.    ADM'S FORUM NON CONVENIENS SUBMISSIONS ARE CONSISTENT WITH ITS CURRENT POSITION ................................... 9

CONCLUSION .............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Ashcroft v. Iqbal,
   129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009) .................................................................... 5

Brink's Ltd. v. South African Airways,
   93 F.3d 1022 (2d Cir. 1996) ............................................................................................ 6

Deutsch v. Novartis Pharms. Corp.,
   723 F. Supp. 2d 521 (E.D.N.Y. 2010) ............................................................................ 5

Edrei v. Copenhagen Handelsbank A/S,
   No. 90 Civ. 1860, 1991 U.S. Dist. LEXIS 5369 (S.D.N.Y. Apr. 18, 1991) ................... 9

El Cid, Ltd. v. New Jersey Zinc Co.,
   575 F. Supp. 1513 (S.D.N.Y. 1983) ............................................................................... 6

Finance One Public Co. v. Lehman Bros. Special Fin., Inc.,
   414 F.3d 325 (2d Cir. 2005) ............................................................................................ 5

GlobalNet Financial.com, Inc. v. Frank Crystal & Co.,
   449 F.3d 377 (2d Cir. 2006) ................................................................................... 2, 5, 6

Lee v. Bankers Trust Co.,
   166 F.3d 540 (2d Cir. 1999) ............................................................................................ 6

New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.,
   352 F.3d 599 (2d Cir. 2003) ............................................................................................ 8

New Hampshire v. Maine,
   532 U.S. 742 (2001) ........................................................................................................ 9

Padula v. Lilarn Props. Corp.,
   84 N.Y.2d 519, 620 N.Y.S.2d 310 (1994) ...................................................................... 6

Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.,
   426 F.3d 580 (2d Cir. 2005) .......................................................................................... 10

Rodal v. Anesthesia Group of Onondaga, P.C.,
   369 F.3d 113 (2d Cir. 2004) ............................................................................................ 9

Schultz v. Boy Scouts of Am., Inc.,
   65 N.Y.2d 189, 491 N.Y.S.2d 90 (1985) ........................................................................ 2

Softel, Inc. v. Dragon Med. and Scientific Commc'ns., Inc.,
   118 F.3d 955 (2d Cir. 1997) ............................................................................................ 6

Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders
   in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 407 F.3d 34 (2d Cir. 2005) ............ 7, 8, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) .................................................................................................................. 5

Fed. R. Civ. P. 44.1 ................................................................................................................ 10

ADM[1] submits the following reply memorandum of law in further support of its Motion for Determination of Choice of Law, and to Dismiss the Amended Complaint with Prejudice. In sum, Ancile suffered a financial injury in Switzerland based on an alleged "extra-contractual" decision ADM made in Illinois regarding certain bills of lading in connection with Solo Vivo's default under the CFA. For the reasons set forth below, the Court should grant the Motion and hold that the only remaining cause of action (Count I) of the Amended Complaint is governed by Illinois law.

## PRELIMINARY STATEMENT

The case, as currently presented to the Court, has a very different posture than when initially filed on November 5, 2008. The Original Complaint focused on contentions that ADM conspired in Brazil with Solo Vivo to defraud Ancile through a common plan to, among other things, convert and dispose of goods in Brazil. Cmpl. ¶¶ 72-90. Further, Ancile asserted a breach of contract claim founded on a prior course of dealing derived from the unquestionably false assertion that ADM endorsed and delivered bills of lading to Ancile in Brazil for two shipments that predated those at issue in this case. Id. ¶¶ 20, 26, 77-80. Through discovery it was conclusively established that this claim was an absolute fabrication made without investigation and that it was Ancile's own attorney who had endorsed and executed those Bills of Lading to the order of Ancile, after receiving them from Solo Vivo.[2] Eventually, the baseless

---

[1] The abbreviations and designations ADM used in its initial moving papers for names and other terms are adopted and used herein.

[2] The deposition testimony of Ancile's Brazilian attorney, Fabio Georgi Infante ("Infante Dep. Tr.") unequivocally establishes that he, not ADM, endorse bills of lading to the order of Ancile.

> Q. Right above those two signatures in the signature line Archer Daniels Midland Company it says, "To the order of Ancile Investment Company Limited." Do you see that?
> A. [F. Infante, deponent] Yes.
> Q. Is that your handwriting?
> A. Yes.
> [. . . .]
> Q. Who instructed you to write that?
> A. Ancile through Heloisa [Slav].
> Q. Is it fair to say that Archer Daniels Midland did not instruct you to write that?
> A. Yes.

See Supplemental Declaration of David Monachino, sworn to on April 27, 2011 ("Monachino Supp. Dcl."), Ex. A, attaching Infante Dep. Tr. at 30:15-31:7.

conspiracy allegations and the false claim of prior endorsement and delivery of bills of lading were dropped by Ancile when it filed the Amended Complaint on June 18, 2010; the claim for conversion, bailment and breach of contract asserted under New York law were dismissed by the Court's March Decision.

The sole remaining claim in this case (Count I) is premised on ADM's decision not to endorse and deliver to Ancile the Bills of Lading from the Abkazia and Calypso shipments. In the Amended Complaint, Ancile asserts that this failure of ADM to act "violated its obligations under the Civil Code of Brazil, subjecting it to extra-contractual liability" in breach of a "duty to act in strict good faith and probity in its commercial dealings with Ancile" and a duty not to exceed ADM's "limits imposed by its economic and social purpose, and by good faith or good morals ...." Amd. Cmpl. at ¶¶ 57-61. The testimony from Plaintiff's principal (Abdul-Massih) establishes that the critical component of the remaining claim, ADM's unwillingness to endorse the Bills of Lading, was the result of decisions made and a corporate policy set by ADM in Illinois. It is also undisputed that the domiciles of the parties are unrelated to Brazil - ADM is domiciled in Illinois and Ancile is domiciled in the Cayman Islands (or perhaps Switzerland). Therefore, under New York's choice of law rules, Illinois law, not Brazilian law, governs Ancile's sole remaining claim.

## POINT I.

## ANCILE FAILS TO ESTABLISH THAT NEW YORK CHOICE OF LAW ANALYSIS REQUIRES THE SELECTION OF BRAZILIAN LAW

A.     **The Parties' Domiciles Are Not Related To Brazil**

It is black letter law that under New York's choice of law analysis "significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort ...." GlobalNet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 384 (2d Cir. 2006) (quoting Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95 (1985)). Although the locus of the tort is typically the primary factor, domicile is still a meaningful component of choice of

2

law analysis. Here, it is undisputable that this factor is unrelated to Brazil. ADM's domicile is Illinois while Ancile is domiciled in either the Cayman Islands or Switzerland. Accordingly, domicile should be recognized as an issue favoring application of the law of Illinois, rather than simply ignoring this component as urged by Ancile. See Ancile Opp. at 10-12.

**B.     The Locus Of The Conduct At Issue In Count I Was Illinois, Not Brazil**

Ancile erroneously attempts to characterize ADM's position about the locus of the tort as new and inconsistent with prior testimony. Id. at 6, n.3. In fact, it is Ancile that is now asserting a contradictory position. The sole remaining claim in this case concerns ADM's decision not to endorse and deliver the Bills of Lading to Ancile. Throughout this case, both ADM and Ancile recognized that this decision was made by ADM personnel at its corporate headquarters in Decatur, Illinois. See ADM Memo at 10-12 [Dkt. 85]; see also Ancile FNC Memo at 10 (acknowledging that, concerning the Bills of Lading, ADM had taken the position that "[t]he critical actions (or inactions) were all directed from personnel in the United States."). Now, in an effort to avoid dismissal of its last cause of action, Ancile attempts to obfuscate the issue by pointing only to general conduct by ADM do Brasil employees related to the Solo Vivo transactions, the process of importing the goods purchased by Solo Vivo, and even activities related to overpayment claims. See, e.g., Ancile Opp. at 5 (citing to ADM testimony about the process of sales and importation). None of the factual testimony relied upon in Ancile's Opposition pertains to ADM's decision to refuse to sign and deliver the Bills of Lading and its supposed violation of a duty of "good faith."

Ancile's unsupported and self-serving assertions that "[i]t is beyond dispute that the injury to Ancile occurred in Brazil ..." defies reality. Ancile Opp. at 22. In fact, the relationship between Ancile and Solo Vivo is expressly financial and has nothing to do with Brazil[3]. In other

---

[3] See Credit Facility Agreement between Ancile and Solo Vivo dated July 20, 2007 ("CFA") (Exhibit 23 to Declaration of Sabetta in Support of Motion to Dismiss for Forum Non Conveniens) [Dkt. 8] (CFA § 1.1) ("This

3

words, Ancile's injury is purely economic, resulting from Solo Vito's failure to send funds to Ancile in Switzerland[4]. Even assuming, arguendo, that ADM would have endorsed the Bills of Lading to Ancile, this endorsement and delivery could have taken place in Illinois, the Cayman Islands, Switzerland or any other place in the world other than Brazil, and, at best, this delivery could have only potentially mitigated the financial injury suffered by Ancile in Switzerland.

Equally disingenuous is Ancile's treatment of the testimony of its Director and only employee, Abdul-Massih. Monachino Dcl., Exh. E, Abdul-Massih Tr. at 29 [Dkt. 84]. He testified that the good faith relationship at issue and his beliefs concerning ADM conduct were not related to Brazil, but were derived from his understanding ADM's corporate policies in Illinois. Thus, Abdul-Massih also established that the critical component of the remaining claim, ADM's unwillingness to endorse the Bills of Lading, was the result of a policy set by ADM in Illinois. See ADM Memo at 12 (citing Abdul-Massih Dep. Tr. at 80-81, 112-113). Rather than squarely address this admission, buried deep in a footnote, Ancile falsely asserts that this testimony should be ignored as merely his subjective understanding of the "Solo Vivo-Ancile financing arrangement." Ancile Opp. at 7, n.3. In fact, his testimony was specific to Bills of Lading. Abdul-Massih Tr. at 81 (ADM was "not willing for corporate reasons to endorse the bill of lading … because of an internal policy…."). Ancile was fully aware that ADM would not endorse and deliver the Bills of Lading due to a conscious decision made at the ADM corporate level in Illinois, not by ADM do Brasil employees.

Similarly unavailing is Ancile's irrelevant contention Brazilian law should apply to this case because "the nationalization of goods and perfection of security interests [were] procedures violated and frustrated by ADM's conduct in Brazil." Ancile Opp. at 14. Count I deals only

---

Agreement sets out the terms and conditions upon and subject to which the Lender has agreed to make available a credit facility to the Borrower of an amount in equal to USD 5'000'000, extendable to USD 10'000'000. . . ." [sic]).

[4] See Id. (CFA § 1.2) ("'Account Bank' means CREDIT SUISSE, Geneva, and/or BNP PARIBAS (SUISSE) SA, Geneva, as advised by the Lender [Ancile] . . . ").

with the requirement of good faith in business dealings imposed by the Brazilian Civil Code. Thus, nationalization of goods and perfection of security interests have no impact on the interest analysis at hand.[5] Finance One Public Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 337 (2d Cir. 2005) ("the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.").

Ancile's attempt to distinguish the cases relied upon by ADM are specious at best. For example, Ancile attempts to distinguish Deutsch v. Novartis Pharms. Corp., 723 F. Supp. 2d 521 (E.D.N.Y. 2010) by claiming that ADM "neglects to inform the Court" that Deutsch involved a choice of law provision. Ancile Opp. at 14. Although a choice of law contract provision was involved in Deutsch, that contractual provision did not govern every aspect of the dispute between the parties and, as set forth in ADM's moving papers, the Court engaged in a choice of law analysis under New York law that found dispositive that the locus of the tort was where the "corporate decisions" at issue were made. Deutsch, 723 F. Supp. 2d at 525-526.

Ancile erroneously attempts to avail itself of GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., by claiming that "ADM's business activities in Brazil are subject to Brazilian law and regulations, including, inter alia, with respect to the nationalization of goods and perfection of security interests." Ancile Opp. at 14. As discussed above, nationalization and security interests are not at issue in Count I. Significantly, the Second Circuit in GlobalNet held that the locus of the tort associated with an insurance broker's failure to disclose information to a customer was the jurisdiction where the defendant was located when it chose not to relay

---

[5] Ancile makes passing references to unspecified violations of "Brazilian law regarding the nationalization of goods, including multiple Articles of Regulatory Instruction No. 680...." Amd. Cmpl. ¶¶ 49, 52. To the extent these statements were intended to pertain to Count I, they should be rejected because they fall far short of the pleading requirement of Fed. R. Civ. P. 8(a). See Ashcroft v. Iqbal, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). Indeed, after extensive fact discovery, including eleven depositions and the exchange of more than eighteen thousand pages of documents, Ancile cannot point to a single specific violation relating to the "nationalization of goods."

5

information to the plaintiff. 449 F.3d at 385. Similarly, ADM's alleged failure to act occurred in Illinois, the place where it made the decision not to endorse the Bills of Lading to Ancile.

Finally, the cases relied upon by Ancile do not support its contention that the conduct implicated in Count I took place in Brazil. In those cases, the acts at issue all involved physical conduct located in the selected jurisdiction rather than an omission of conduct or esoteric allegations of good faith as in this case. See Brink's Ltd. v. South African Airways, 93 F.3d 1022, 1032 (2d Cir. 1996) (defendant's employees stole goods in South Africa); El Cid, Ltd. v. New Jersey Zinc Co., 575 F. Supp. 1513, 1516 (S.D.N.Y. 1983) (meetings, improper litigation, attempted undue influence of a judge in Bolivia); Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999) (defamatory actions of searching desk and expulsion from office in New Jersey); Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 311 (1994) (employee fell from scaffold in Massachusetts); Softel, Inc. v. Dragon Med. and Scientific Commc'ns., Inc., 118 F.3d 955, 968 (2d Cir. 1997) (source code accessed in New York).

Here, Count I concerns an omission from conduct, ADM's failure to endorse and deliver the Bills of Lading. The location of a failure to act is ethereal and is properly attributed to the location where the decision to withhold from engaging in conduct took place - in this case Illinois. See Globalnet, 449 F.3d at 381, 385 (affirming ruling that tort claims based on a failure to act occurred in the location of the defendant's place of business). Accordingly, ADM's Motion should be granted because Illinois has a far greater interest than Brazil in regulating good faith in business relations between Illinois and Cayman Island entities.

## POINT II.

### THERE HAS BEEN NO RULING ON THE ISSUE OF CHOICE OF LAW

Ancile contends, for the first time, that the law of the case doctrine "mandates that Brazilian law be applied to Ancile's [sole remaining] claim." Ancile Opp. at 15. This argument is misplaced because it relies solely upon a tortured reading of dicta in Judge Crotty's September

23, 2009 Opinion and Order [Dkt. 47] (the "2009 Opinion"). that neither reached nor considered the application of New York choice of law principles. The absurdity of Ancile's argument regarding choice of law is evidenced by the mere fact that Judge Crotty set choice of law question down for briefing; <u>obviously, if Judge Crotty had already made a decision regarding choice of law he would not have asked the parties to brief the issue after the amendment of the Complaint</u>.

Before the parties conducted extensive fact discovery between October 6, 2009 and May 10, 2010 -- including eleven depositions and the exchange more than 18,000 documents -- and ten months before Ancile substantially amended its complaint on June 18, 2010, Judge Crotty held, among other things, that this case had sufficient contacts to New York to warrant denying ADM's *forum non conveniens* motion. Id. 2009 Opinion at 17. The solitary sentence quoted by Ancile is dicta by which the Court acknowledged ADM's position that "some of Ancile's claims," without specification, may be governed by the law of Brazil. Id. at 14. In fact, Judge Crotty went on to state: "**<u>The Court notes that there are questions of choice of law</u>**, and where Brazilian law applies, sharp dispute as to what that law is." Id. at 16 (emphasis added). Thus, this dicta could have been referring to any claim presented in the original Complaint, including the allegations of over payment[6], conspiracy to defraud and the false claims that ADM had already endorsed bills of lading to Ancile in Brazil. The conversion or bailment causes of action regarding commodities located in Brazil could also have been the subject of the dicta.

For the law of the case doctrine to apply, choice of law would have to have been presented to or explicitly determined by the Court. In <u>Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber</u>, the

---

[6] Count I in the Original Complaint for violation "Brazilian Civil Code, as to Overpaid Funds" which was voluntarily dismissed by "Stipulation and Order of Partial Dismissal, Counts I, III, IV Only" on December 22, 2009 [Dkt. 51], which was a month <u>after</u> Judge Crotty denied the Forum non Conveniens motion on September 23, 2009. [Dkt. 47].

7

Second Circuit issued an opinion on a motion to dismiss that contained dicta noting that "shareholders assigned their legal malpractice causes of action to the plaintiff." 407 F.3d 34, 44-45 (2d Cir. 2005). The Second Circuit rejected plaintiff's argument that the validity of the assignment at issue was the law of the case, holding that the doctrine was "simply not applicable here, because neither the district court nor this court was ever squarely presented with the question . . . [Our first decision] which mentioned the assignment only in passing, certainly did not decide the issue." Id. Thus, a prior decision or order "is controlling only as to matters within its compass …Put simply, the law of the case does not extend to issues [the] court did not address." New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 601, 606 (2d Cir. 2003) (citations and quotations omitted). The 2009 Opinion likewise did not squarely address the issue of choice of law and therefore does not and cannot warrant the application of the law of the case doctrine.

Further, the Court should reject Ancile's speculation that the "only reasonable interpretation" of the 2009 Opinion is that Judge Crotty intended to hold that "the law of Brazil applies to Ancile's claims relating to ADM's handling of the Bills of Lading in Brazil…." Ancile Opp. at 16. This position is surprising given that Ancile had also asserted that the overpayment issue was governed by Brazilian Law. Cmpl. ¶¶ 51-54. Ancile's argument is also preposterous in light of the fact that on April 16, 2010, Judge Crotty held a conference that addressed, among other things, the schedule for filing choice of law motions. During that conference, Ancile's counsel never asserted that choice of law had already been established. Rather, they informed the Court that Ancile wished to amend its complaint at the close of fact discovery and that "[w]e also at that time would like to cross move to ask Your Honor to decide the choice of law issue that is paramount in this case, which is [sic] does Brazilian law apply or does New York law apply." [Dkt. 76] April 16, 2010 Tr. at 6:8-11 (Monachino Supp. Dcl. Exh. B). After a discussion of the many jurisdictions whose laws might apply to the case, Ancile's

8

counsel remarked "I think that we do not at all disagree with Mr. Sabetta that we should have a determination by the Court as to what law applies, and then we should have expert discovery on the relative law." Id. at 22:21-24. Accord Jan. 13, 2011 Order at 2 [Dkt. No. 77]. Therefore, it cannot be legitimately disputed that the Court has not yet made a determination concerning choice of law.

## POINT III.

### ADM'S *FORUM NON CONVENIENS* SUBMISSIONS ARE CONSISTENT WITH ITS CURRENT POSITION

Ancile asserts that ADM "should be estopped" from seeking the application of Illinois law, because ADM's March 2009 FNC Motion stated that Brazilian law may apply in the case. Ancile Opp. at 6. Ancile's argument is meritless, because the doctrine of judicial estoppel "applies only in situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." Stichting Ter Behartiging, 407 F.3d at 45, citing Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004). As set forth above, the Court has not yet adopted any position regarding the choice of law applicable to Count I of the Amended Complaint. Therefore, even if ADM had taken a legally inconsistent position its unsuccessful FNC Motion -- which it did not -- the doctrine of judicial estoppel does not apply here, because it is well settled that "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." New Hampshire v. Maine, 532 U.S. 742, 750-751 (2001) (citations and quotes omitted).

Additionally, although Ancile makes much of the apparent tension between ADM's choice of law analysis in its FNC Motion and the instant Motion, that tension is easily explained by the fact that ADM's FNC arguments were directed at the entire universe of Ancile's claims in the original Complaint, which contained a far broader set of allegations about a Brazil-based conspiracy with Solo Vivo, related bailment and conversion claims, and false allegations that

9

ADM had previously endorsed and delivered Bills of Lading to Ancile in Brazil. Cmpl. ¶¶ 20, 26, 72-84, 88-90. Many of the acts relevant to those claims did take place in Brazil. ADM's position concerning the application of Illinois law is limited to the claim about its decision to not endorse the Bills of Lading. As such, the doctrine of judicial estoppel is not applicable here. See, e.g., Edrei v. Copenhagen Handelsbank A/S, No. 90 Civ. 1860 1991 U.S. Dist. LEXIS 5369 (S.D.N.Y. Apr. 18, 1991) (declining to apply judicial estoppel where the party proffered viable reasons for its pleadings containing varying assessments of the value of the subject of the action).[7]

Finally, Ancile erroneously asserts that factual statements about activities undertaken by ADM do Brasil employees in Brazil made as part of ADM's FNC Motion constitute judicial admissions barring the current request for the application of Illinois law to the sole remaining claim in this case. Ancile Opp. at 17. Again, Ancile references generalized statements about the roles the ADM entities' respective employees in an attempt to gloss over that the instant motion pertains only to Ancile's claim about the ADM decision not to endorse and deliver the Bills of Lading to Ancile. See, e.g., id. at 20 (citing Michielsen Dep. Tr. at 102, which concerned the process of communicating with Ancile, not the decision to decline to endorse the Bills of Lading). Ancile also incorrectly references legal positions asserted by ADM's counsel as part of its flawed judicial admission analysis. Id. at 17-18. Additionally, Ancile's position ignores that ADM consistently maintained that the decisions regarding the endorsement and delivery of the Bills of Lading were made by ADM personnel in Illinois.[8]

---

[7] It is no surprise that differing assessments may exist as to the law to be applied to different components of the claims made by Ancile. The Second Circuit has held, in the context of international shipping torts, that "the choice of law analysis is complex, as well as highly dependent on facts that may not be adduced until discovery has proceeded." Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co., 426 F.3d 580, 586 (2d Cir. 2005) (discussing the liberal notice requirements of Fed.R.Civ.P. 44.1 allowing pleading in the alternative the application of several bodies of foreign law).

[8] See, e.g., Declaration of Celia Terra [Dkt. 23] ¶ 5 (endorsement of bills of lading by ADM do Brasil employees was performed pursuant to corporate "guidelines and practices" established by ADM; Declaration of Joao Carlos de

## CONCLUSION

For the reasons set forth below and in ADM's initial Memorandum of Law [Dkt. 85], the Court should grant the instant Motion and hold that the only remaining cause of action (Count I) of the Amended Complaint is governed by Illinois law, and that the action be dismissed with prejudice.

Dated:   New York, New York
        April 27, 2011

                SEYFARTH SHAW LLP

                By:  /s/ David M. Monachino
                    David M. Monachino (DM 1527)
                    Donald Dunn (DD 0069)
                    Seyfarth Shaw LLP
                    620 Eighth Avenue
                    New York, New York 10018-1405
                    (212) 218-5500

                    Attorneys for Defendant Archer Daniels Midland Company

---

Brito [Dkt. 22] ¶ 7 (authorization concerning delivery of the Bills of Lading at issue to Solo Vivo, rather than to Ancile, was made by ADM, not ADM do Brasil); Declaration of Bernard Arthur Hennes ¶ 2 [Dkt. 10] ("ADM vested me with powers which authorized me to act on behalf of ADM in certain subjects, among which to sign bills of lading for commodities purchased by ADM abroad"); Declaration of Domingo Alejandro Lastra [Dkt. 11] (same); Declaration of Luiz Carlos Goncalves Lopes [Dkt. 12] (same).