UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ANCILE INVESTMENT COMPANY
LIMITED,

                Plaintiff,

   -against-

ARCHER DANIELS MIDLAND COMPANY,

                Defendant.

-----------------------------------------------------------X

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/3/11
```

08 CV 9492 (KMW)

OPINION AND ORDER

WOOD, U.S.D.J.:

      This Order amends the Court's August 3, 2011 Order (Dckt. Entry 93), and modifies the language that is underscored below. See *infra*, page 2.

      This motion illustrates the awkward position in which parties find themselves after firmly taking one position about choice of law in litigating a *forum non conveniens* motion, and then arguing the opposite position in a later choice of law motion. At an earlier stage of the litigation, defendant Archer Daniels Midland Company ("Defendant") argued vigorously that this case was controlled by Brazilian law. Plaintiff Ancile Investment Company Limited ("Plaintiff") argued equally vigorously that the case was based upon decisions made by employees of Defendant at its corporate headquarters in Illinois, and that, thus, Illinois law (or other U.S. law) should apply to this case. Now, on a motion by Defendant to determine the body of law that should apply to the one remaining claim in the case, the parties each contend the exact opposite of what they previously argued.

      The procedural history and factual background of this case are more fully reviewed in the Court's previous opinions in this matter, the parties' familiarity with which is assumed. (*See*

1

Opinion & Order Denying Defendant's Motion to Dismiss and Denying Plaintiff's Cross-Motion for Summary Judgment, September 24, 2009 (Dckt. Entry No. 47), 2009 WL 3049604 ("*Forum Non* Opinion"); Opinion and Order Granting Defendant's Motion for Partial Dismissal of the Second Amended Complaint, March 8, 2011 (Dckt. Entry No. 79), 2011 WL 813724.)

As of now, Plaintiff has pending a single claim brought under the Brazilian Civil Code. Defendant has moved for an order determining that Plaintiff's claim is governed by the law of the state of Illinois, and moves to dismiss the claim with prejudice pursuant to Illinois law. Plaintiff opposes the motion; argues that the law of Brazil should apply; and argues that, in any event, a dismissal with prejudice would not be appropriate even if Illinois law does apply.

For the reasons that follow, the Court finds that the law of Brazil applies to Plaintiff's claim. ~~Plaintiff's~~ Defendant's choice of law motion and motion to dismiss are DENIED.

I.   **Estoppel Issues**

As a threshold matter, the Court rejects Plaintiff's arguments that the choice of law question may be resolved based on the doctrines of the law of the case, judicial admission by the Defendant or judicial estoppel. Plaintiff argues that Defendant's earlier arguments that Brazilian law applies to this action, and certain statements by the Court in prior decisions in the case, mean that this issue has already been decided by the Court, or, at the very least, that Defendant is bound by its earlier arguments and precluded from arguing now that Brazilian law does not apply. The Court disagrees.

A.   **Law of the Case**

There has been no ruling on choice of law that would allow Plaintiff to invoke the law of the case doctrine. The law of the case doctrine prevents relitigation of an issue decided at an earlier point in an action only if the "court was ever squarely presented with the question . . . ." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van*

*Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 44 (2d Cir. 2005). *See also* 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478 (2d ed. 2011) ("Actual decision of an issue is required to establish the law of the case. Law of the case does not reach a matter that was not decided."). The Court's *forum non conveniens* decision did make passing reference, in dicta, to the idea that "Brazilian law applies to some of Ancile's claims." (*Forum Non* Opinion at 14.) However, these statements did not amount to a legal decision on whether Brazilian law applies to the currently pending claim. At the time that the Court's decision on the *forum non conveniens* motion was issued, Plaintiff had several additional claims pending, including other claims that directly cited to provisions of the Civil Code of Brazil. Moreover, throughout this action, both the Court and the Parties have proceeded as if the choice of law issues remained open questions. Thus, the law of the case doctrine does not control choice of law now.

### B. Judicial Admission

Defendant also cannot be held to have judicially admitted that Brazilian law applies. "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal." *Guadagno v. Wallack Ader Levithan Assocs.*, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997) (quoting *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995)). An "evidentiary admission," in contrast, may be used against the party, but it also "may be controverted or explained by a party." *Id.*

There is no question that Defendant argued that Brazilian law applies to this action in support of its motion to dismiss the case based on the doctrine of *forum non conveniens*. (*See, e.g.,* Memorandum of Law of Defendant Archer Daniels Midland Company in Support of its Motion to Dismiss the Complaint (Dckt. Entry No. 17) ("Def. MTD Mem.") at 21 (containing a

3

section heading entitled "Brazilian Law Governs This Action").) However, the law is clear that judicial admissions are "statements of fact rather than legal arguments made to a court." *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 97 n.7 (2d Cir. 1998). Thus, although Defendant may have admitted certain *facts* contained in declarations Defendant submitted in support of that motion, legal arguments and ultimate conclusions about which law applies to this action are not judicial admissions. *See Stichting*, 407 F.3d at 45 (holding that a statement in a Rule 56.1 Statement that certain claims were assigned "cannot be taken as a concession that, under applicable law, the assignment was validly made").[1]

### C. Judicial Estoppel

Defendant is also not estopped from arguing that Brazilian law does not apply, notwithstanding its earlier arguments that Brazilian law does apply. Judicial estoppel "applies only in situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." *Stichting*, 407 F.3d at 45 (citing *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)). The Court never adopted Defendant's position that Brazilian law governs the case, and thus, judicial estoppel does not apply.

Thus, the Court must apply ordinary choice of law principles to resolve this dispute.

## II. Choice of Law Analysis

### A. Applicable Law

---

[1] Similarly, although statements regarding the application of Brazilian law were contained in declarations and affidavits submitted by Defendant, in addition to its briefs, to the extent those statements are conclusions of law, they do not constitute judicial admissions. For example, the statement that "nearly every relevant act or event" in the case occurred in Brazil in a declaration from Defendant's counsel is not a judicial admission of a fact. (*See* Declaration of John C. Sabetta (Dckt. Entry No. 8) ¶ 2.)

4

In a federal action based on diversity of citizenship, the court applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York law, a court must resolve, as a threshold matter, whether there is an actual conflict between the bodies of law that each party seeks to have applied. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). If there is a conflict, then the court applies the appropriate choice of law analysis, depending on the type of the action. *Id.*

For tort actions, New York courts apply an "interest analysis." *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (citing *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197, 480 N.E.2d 679 (1985)). Under the interest analysis, a court must apply "the law of the jurisdiction having the greatest interest in the litigation." *Id.* "In deciding which state has the prevailing interest," courts must "look only to those facts or contacts that relate to the purpose of the particular laws in conflict." *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992). The Second Circuit has explained that "[u]nder this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.* (quoting *Schultz*, 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679).

New York choice of law analysis for torts differentiates between tort rules that regulate conduct and those that involve loss allocation. *Guidi v. Inter-Cont'l Hotels Corp.*, No. 95 Civ. 9006, 2003 WL 1907901, at *1 (S.D.N.Y. Apr. 16, 2003). Conduct-regulating rules are those that provide "the appropriate standards of conduct, rules of the road, for example." *GlobalNet*, 449 F.3d at 384 (quoting *Mascarella v. Brown*, 813 F. Supp. 1015, 1019 (S.D.N.Y. 1993)). For conduct regulating rules, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Mach.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993). *See*

5

*also Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) ("If conduct regulating rules are in conflict, New York law usually applies the law of the place of the tort ('*lex loci delicti*').").

### B.  Application of Law to Facts

#### 1.  A Conflict Exists

The parties agree that there is a conflict between Brazilian law and Illinois law. Plaintiff's claim arises under the "Civil Code of Brazil." Plaintiff alleges that Defendant, "by its action or inaction, voluntarily, negligently and/or imprudently violated the legal rights of Ancile, and caused damage to Ancile in violation of Article 186 of the Civil Code of Brazil" and that Defendant's actions "exceeded the limits imposed by its economic and social purpose, and by good faith or good morals, in violation of Article 187 of the Civil Code of Brazil." (Amended Complaint ("Compl.") (Dckt. Entry No. 68) ¶¶ 57-58.) Plaintiff also alleges that the Civil Code of Brazil imposed upon Defendant a "duty to act in strict good faith and probity in its commercial dealings with [Plaintiff] and Solo Vivo . . . ." (*Id.* ¶ 59.)

There is a conflict between Brazilian law and Illinois law on this issue. Brazil is a civil law jurisdiction; Illinois is a common law jurisdiction. The source of liability under Brazilian law is Brazil's Civil Code, whereas Defendant's tort liability under Illinois law, if any, would be derived from judicial decisions. As both parties agree, Illinois common law does not recognize a cause of action for the breach of a duty of "good faith or good morals" set forth in the Brazilian Civil Code. *See* Defendant's Memorandum of Law in Support of its Motion for Determination of Choice of Law, and to Dismiss the Amended Complaint with Prejudice (Dckt Entry No. 85) ("Def. Mem.") at 9-10 (citing *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill. App. 3d 160, 165, 815 N.E.2d 911, 916 (2004) (holding that an implied covenant of good faith between parties exists "only where there is in the express contract of the parties a satisfactory basis which makes it necessary to imply certain duties and obligations in order to

6

effect the purposes of the parties making the contract.")); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Determination of Choice of Law, and to Dismiss the Amended Complaint with Prejudice (Dckt Entry No. 88) ("Pl. Opp.") at 9 ("Substantively, there is no analog in the common law of Illinois for the provisions of the Brazilian Civil code at issue . . . ."). Because there is a substantive conflict between the two proposed bodies of law, the Court moves to the next stage to determine which law applies.

### 2.    Interest Analysis

The parties also agree that Plaintiff's claims arise under conduct-regulating tort rules. Thus, the Court looks primarily to "the law of the jurisdiction where the tort occurred." *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277. While Defendant has not judicially admitted that Brazilian law applies, the record it created in support of its motion to dismiss makes abundantly clear that the alleged tort occurred in Brazil.

The Complaint, on its face, alleges conduct that occurred primarily in Brazil. Plaintiff alleges that its claim arises from Defendant's "fail[ure] to timely endorse and deliver the Bills of Lading to Ancile as required, and further in allowing and facilitating the release of the goods associated with the Bills of Lading directly to Solo Vivo . . . ." (Compl. ¶ 57.) According to the Complaint, Defendant was instructed to deliver the Bills of Lading to Plaintiff's agent in Brazil, and instead, delivered the Bills of Lading (and released the goods) to Solo Vivo in Brazil.

Defendant attempts to muddy the waters by arguing that the actions giving rise to its alleged liability were omissions, which are "properly attributed to the location where the decision to withhold from engaging in conduct took place . . . ." (Reply Memorandum in Further Support of Archer Daniels Midland Company's Motion for Determination of Choice of Law, and to Dismiss the Amended Complaint with Prejudice (Dckt. Entry No. 90) ("Def. Reply") at 10.) The Second Circuit has indeed held that torts based on a "failure to act" are centered in the location

7

where the decision not to act was made. *See GlobalNet*, 449 F.3d at 385 (holding that where New York insurance broker failed to notify a Florida insured of material information, tort occurred in New York). Defendant also cites cases where corporate entities made certain decisions that had their impact in other jurisdictions but the court applied the law where the corporate entity was based, because that is where the decisions were made. *See, e.g., Deutsch v. Novartis Pharms. Corp.*, 723 F. Supp. 2d 521, 525 (E.D.N.Y. 2010) (holding that where pharmaceutical company allegedly failed to conduct adequate clinical trials for drug, concealed information from the FDA and failed to disclose information concerning connection between certain drugs and certain diseases, the torts occurred in the state where company is headquartered). Defendant argues that these decisions support the application of Illinois law, because, Defendant contends, "the decisions pertaining to the endorsement and delivery of the Bills of Lading (or lack thereof) were made in Illinois by ADM personnel, rather than in Brazil by ADM's wholly owned subsidiary corporation, ADM do Brasil." (Def. Mem. at 11.)

The problem with Defendant's argument is not only that it previously argued the opposite proposition, but that the record Defendant created in the case persuasively demonstrates that that opposing proposition is correct. The record in the case shows that the relevant decisions giving rise to Defendant's alleged liability were, in fact, made in Brazil by personnel of Defendant's subsidiary, ADM do Brasil. In support of its motion to dismiss, Defendant argued unequivocally that "the decisions and actions regarding the [Bills of Lading] . . . were not carried out or directed or controlled by . . . anyone in the United States." (Reply Memorandum of Law of Defendant Archer Daniels Midland Company in Further Support of its Motion to Dismiss the Complaint (Dckt. Entry No. 35) ("Def. MTD Reply") at 2-3.) *See also id.* at 6 ("[T]he endorsement and delivery of the [Bills of Lading] were handled entirely by ADM do Brasil employees.").

8

Defendant pointed out that it had submitted "numerous declarations from individuals who were personally involved in the discussions and decisions regarding the [Bills of Lading] and the Overpayment . . . establishing that the discussions and decisions occurred in Brazil between employees of ADM do Brasil and Solo Vivo." (*Id.* at 3.) For example, Michael Michielsen, then Defendant's Director of Credit and Business Development for South America, testified that

> ADM do Brasil employees were responsible for the sales, credit arrangements, logistics, pricing, and all other elements of the business that ADM do Brasil conducted with Solo Vivo, including the four fertilizer commodities transactions at issue in this action. ADM's role in these transaction [sic] was limited to providing an advisory opinion as to Solo Vivo's creditworthiness on each transaction, and to acting as consignee of the goods in the first instance.

(Declaration of Michael Michielsen (Dckt. Entry No. 40) ¶ 7.)

The Supplemental Declaration of Joao Carlos de Brito, Importation Analyst at the Trading Management department of ADM do Brasil, makes clear that the relevant decisions concerning the Bills of Lading were made by ADM do Brasil employees without consultation with (let alone instruction from) ADM personnel in Illinois. Mr. Brito explained that when Solo Vivo requested that ADM do Brasil endorse the Bills of Lading to Ancile, its representative communicated with him in the first instance. Mr. Brito consulted his supervisor, Celia Terra, also an employee of ADM do Brasil. Ms. Terra "in turn consulted with others at ADM do Brasil. She advised [Mr. Brito] thereafter that ADM would agree to the Solo Vivo request" only if certain conditions were met. (Supplemental Declaration of Joao Carlos de Brito (Dckt. Entry No. 37) ("Supp. Brito Dec.") ¶ 5.) As Defendant itself pointed out in its Memorandum of Law in support of its motion to dismiss, the record does not show that Ms. Terra (or any ADM do Brasil employee) ever consulted with anyone within ADM in Illinois regarding this decision. (Def. MTD Mem. at 4.) Mr. Brito relayed Ms. Terra's decision to Solo Vivo. Later, Mr. Brito himself caused the release of the Bills of Lading and the goods to Solo Vivo "as authorized by the

9

Commercial Department of ADM do Brasil." (Supp. Brito Dec. ¶ 9.) Again, there is no indication that anyone at ADM in Illinois was in any way involved with this decision. Mr. Brito concludes, "[i]n sum, Solo Vivo's requests to ADM concerning the endorsement and delivery of Bills of Lading and amendments to the payment instructions of two invoices were addressed to, and decided entirely in Brazil by ADM do Brasil employees acting for ADM."[2] (Supp. Brito Dec. ¶ 10.)

Defendant attempts to get around these admissions by pointing out that Plaintiff had argued throughout the litigation of the motion to dismiss that New York or Illinois law should apply. For example, Plaintiff had argued that "ADM-US personnel located in the United States controlled the handling of the relevant [Bills of Lading] . . . ." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint (Dckt. Entry No. 25) at 10.) But Defendant submitted sworn affidavits from its own employees and employees of ADM do Brasil expressly stating that this was not the case. Defendant also cites to the deposition testimony of

---

[2] Defendant points to certain statements in the declarations it submitted in support of its motion to dismiss to support its new contention that "ADM consistently maintained that the decisions regarding the endorsement and delivery of the Bills of Lading were made by ADM personnel in Illinois." (Def. Reply at 10.) Given Defendant's arguments in support of its motion to dismiss, this contention is patently false. Moreover, the declarations do not support Defendant's argument. For example, Ms. Terra's declaration states that endorsement of the bills of lading was performed pursuant to corporate "guidelines and practices" established by ADM in Illinois. (See Declaration of Celia Terra in Support of Defendant's Motion to Dismiss (Dckt. Entry No. 19) ¶ 5.) But Plaintiff's claim is not concerned with the "guidelines and practices" established in Illinois – it is about the implementation of those guidelines and practices by employees of ADM do Brasil in handling this particular set of transactions. As Defendant argued at the time, Ms. Terra did not consult with anyone in the United States when deciding how to handle this transaction.

Defendant also cites to Mr. Brito's first Declaration, which stated that the handling of the Bills of Lading depended upon "ADM authorization" to release them. (Declaration of Joao Carlos de Brito in Support of Defendant's Motion to Dismiss (Dckt. Entry No. 20) ¶ 7.) Mr. Brito's first declaration appears to use the term "ADM" to refer to both ADM itself and to ADM do Brasil. His Supplemental Declaration clarifies that the requests concerning the endorsement and delivery of Bills of Lading "were addressed to, and decided entirely in Brazil by ADM do Brasil employees . . . ." (Supp. Brito Dec. ¶ 10.)

10

Plaintiff's principal, who stated that it was his understanding that Defendant was "not willing for corporate reasons to endorse the bill of lading . . . because of an internal policy . . ." at ADM's U.S. headquarters in Illinois. (Def. Reply at 4 (quoting Deposition Testimony of Nabil Marc Abdul-Massih).) But the subjective understanding of Plaintiff's principal about where the relevant decisions originated cannot outweigh the unequivocal sworn statements from Defendant's representatives.

Brazil has the greatest interest in regulating tortious conduct occurring within its borders. Because the record in this case demonstrates that the locus of the tort is in Brazil, Brazil has the greatest interest in resolving the dispute. Thus, under New York choice of law principles, the law of Brazil applies to Plaintiff's remaining claim.

### III. Conclusion

For the reasons stated above, Defendant's Motion for Determination of Choice of Law in favor of Illinois law is DENIED. The Court holds that the law of Brazil applies to this case.

SO ORDERED.

Dated: New York, New York
August 3, 2011

_____
Kimba M. Wood
United States District Judge